IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

NATIONAL UNION FIRE INSURANCE       §
CO. OF PITTSBURGH, PENNSYLVANIA;    §
ASSOCIATED ELECTRIC & GAS           §
INSURANCE SERVICES LTD.;            §
ALLIANZ GLOBAL RISKS US             §
INSURANCE CO.; COMMONWEALTH         §
INSURANCE CO.; NAVIGATORS           §
MANAGEMENT COMPANY, INC.; and       §
ARCH SPECIALTY INSURANCE CO.,       §
                                    §       CIVIL ACTION NO. H-10-0342
            Plaintiffs,             §
                                    §
v.                                  §
                                    §
AKER KVAERNER/IHI, a General        §
Partnership,                        §
                                    §
            Defendant.              §

<u>**MEMORANDUM OPINION AND ORDER**</u>

National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), Associated Electric & Gas Insurance Services Ltd. ("AEGIS"), Allianz Global Risks US Insurance Company ("Allianz"), Commonwealth Insurance Company, Navigators Management Company, Inc. ("Commonwealth"), Navigators Management Company, Inc. ("Navigators"), and Arch Specialty Insurance Company ("Arch") (collectively "the Insurers") bring this action against Aker Kvaerner/IHI ("AK/IHI") seeking an order compelling AK/IHI to arbitration or, in the alternative, a declaratory judgment concerning certain insurance coverage issues. Pending before the court is AK/IHI's Motion to Dismiss (Docket

Entry No. 13).  For the reasons explained below, the court will not dismiss the complaint, but will transfer it to the District Court for the Western District of Louisiana where related litigation between the parties is pending.

## I.  Factual and Procedural Background

This action concerns an insurance coverage dispute arising from hurricane damage to a Liquid Natural Gas ("LNG") regasification terminal in Cameron Parish, Louisiana.  AK/IHI signed a contract with Cameron LNG, LLC, a subsidiary of Sempra Energy, in 2004 to engineer, procure, and construct the LNG terminal.[1]  AK/IHI was in the later stages of the terminal construction project when Hurricane Ike made landfall in eastern Texas on September 13, 2008, and inflicted substantial flooding and wind damage along the coasts of eastern Texas and western Louisiana.[2]  AK/IHI is a Texas General Partnership with its administrative offices in Houston, Texas.  The partnership consists of two partners, Aker Solutions US Inc. and IHI Inc.  Aker Solutions US Inc. is a Delaware Corporation with its principal place of business in Houston, Texas.[3]  IHI Inc. is a Delaware

---

[1]Complaint, Exhibit A to Defendant's Memorandum of Law in Support of Motion to Dismiss Complaint ("Defendant's Memorandum"), Docket Entry No. 15, ¶ 21.

[2]Id. ¶¶ 23-26.

[3]Complaint, Exhibit A to Defendant's Memorandum, Docket Entry No. 15, ¶ 6.

Corporation with its principal place of business in New York.[4]  The Insurers have alleged that IHI's principal place of business is in Houston, Texas.[5]  AK/IHI, however, has provided an affidavit from Keiichi Ishikane, a Senior Vice President-Sales for IHI Inc., stating that the majority of IHI's executives work in IHI's New York office, and that all major management, investment, and financial decisions are made in the New York office.[6]  Ishikane states that IHI opened a sales office in Houston in 2010 that is currently staffed by only one employee.[7]  The Insurers have provided no evidence contradicting Ishikane's statements.

The Insurers who bring this action were all involved in underwriting Construction All Risk insurance policies for the LNG terminal.[8]  National Union is a Pennsylvania corporation with its principal place of business in New York.[9]  AEGIS is a Bermuda corporation with its principal place of business in Bermuda.[10]

---

[4] Id. ¶ 7.

[5] Complaint to Compel Arbitration, Alternatively for Declaratory Judgment ("Insurers' Complaint"), Docket Entry No. 1, ¶ 9.

[6] Declaration of Keiichi Ishikane, Exhibit I to Defendant's Memorandum, Docket Entry No. 20, ¶¶ 1-16.

[7] Id. ¶¶ 17-18.

[8] See, e.g. AEGIS Property Insurance Subscription Policy, Exhibit A to Insurers' Complaint, Docket Entry No. 1.

[9] Insurers' Complaint, Docket Entry No. 1, ¶ 3.

[10] Id. ¶ 4.

Allianz is a California corporation with its principal place of business in Illinois.[11]  Commonwealth is a Canadian corporation with its principal place of business in British Columbia.[12]  Navigators is a New York corporation with its principal place of business in New York.[13]  Arch is a Nebraska corporation with its principal place of business in New York.[14]

## A.   The Insurance Policies

The six policies (collectively "the Policies") issued by the Insurers each underwrite percentage shares of a total insurance coverage of $400,000,000 on the LNG terminal.[15]  The Policies state that the applicable law is that of New York.[16]

One of the central disputes between the parties involves the proper interpretation of General Clause Three, entitled "Arbitration," found in each of the Policies.[17]  The clause provides:

------

[11]Id. ¶ 5.

[12]Id. ¶ 6.

[13]Id. ¶ 7.

[14]Id. ¶ 8.

[15]Property Insurance Subscription Policy, Exhibit A to Insurers' Complaint, Docket Entry No. 1, p. 4.

[16]Id.

[17]The text of General Condition Three in all six insurance policies is provided in Exhibit A to Reply Brief of AK/IHI in Further Support of Motion to Dismiss, Docket Entry No. 28.

-4-

3.   Arbitration

If the Insured and the Underwriters fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

a.   The Insured has fully complied with all provisions of this Policy, and

b.   The Underwriters have received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire.  If the appraisers fail to agree upon an umpire within thirty (30) days then, on the request of the Insured or the Underwriters, the umpire will be selected by a judge of a court of record in the jurisdiction in which the arbitration is pending.  The appraisers will then appraise the amount of loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire.  An award agreed to in writing by any two (2) will determine the amount of loss.

The Insured and the Underwriters will each:

a.   Pay its chosen appraiser; and

b.   Bear equally the other expenses of the arbitration and umpire.

A demand for arbitration shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy.

The Underwriters will not be held to have waived any of its rights by any act relating to arbitration.

The Insured and the Underwriters shall each bear the expenses of their own appraisers and shall bear equally the expenses of the umpire.

-5-

The seat of arbitration shall be the State of New York.[18]

The parties dispute whether General Condition Three is a binding arbitration clause, and, if it is, whether the clause applies to disputes over coverage or just to disputes over the amount of loss.

**B.    Hurricane Ike**

In the early morning of September 13, 2008, Hurricane Ike made landfall near Galveston, Texas, causing substantial wind and flooding damage along the coasts of eastern Texas and western Louisiana.  AK/IHI states that the storm inflicted substantial damage on the equipment and structures at the LNG terminal construction site in Cameron Parish.[19]

AK/IHI filed claims for its losses under the Policies.  Over a period of several months AK/IHI and the Insurers engaged in negotiations concerning the amount of loss and issues of coverage under the Policies.  The Insurers agreed to pay certain claims but denied others.  In particular, the parties disagreed over two issues:  first, whether the Insurers were obligated to pay for dredging silt that had accumulated in the marine terminal after the seventy-two hour period following the storm; and second, whether certain other claims were excluded from coverage as "consequential

---

[18]Property Insurance Subscription Policy, Exhibit A to Insurers' Complaint, Docket Entry No. 1, p. 19.

[19]See Summary of Loss, Exhibit F to Insurers' Complaint, Docket Entry No. 1.

losses."[20]  AK/IHI alleges that the Insurers have failed to pay more than $24 million of covered costs.[21]

## C.   Procedural Background

On February 1, 2010, AK/IHI brought suit against the Insurers in the 38th Judicial District Court of Cameron Parish, Louisiana, alleging breach of contract and bad faith regarding the Insurers' handling of AK/IHI's insurance claims.[22]   On February 4, 2010, counsel for the Insurers provided AK/IHI with written notice of their demand that the underlying dispute be settled in arbitration.[23]   On the same day, the Insurers filed in this court a Complaint to Compel Arbitration (Docket Entry No. 1).   The Insurers argue that General Condition Three in the Policies requires AK/IHI to submit the dispute to arbitration.[24]   In the alternative, the Insurers seek declaratory judgments that the additional insurance payments sought by AK/IHI are consequential damages unavailable under the terms of the Policies,[25] and that

---

[20]Letter from Scott Ray to Greg Presswood, December 2, 2009, Exhibit H to Insurers' Complaint, Docket Entry No. 1.

[21]Defendant's Motion to Dismiss Complaint, Docket Entry No. 13, ¶ 3.

[22]Complaint, Exhibit A to Defendant's Memorandum, Docket Entry No. 15.

[23]Notice and Demand for Arbitration, February 4, 2010, Exhibit C to Defendant's Memorandum, Docket Entry No. 15.

[24]Insurers' Complaint, Docket Entry No. 1, ¶¶ 40-43.

[25]Id. ¶¶ 44-47.

claims for the costs of dredging silt that accumulated more than 72 hours after the storm hit are also excluded under the Policies.[26]

On February 19, 2010, the Insurers removed the Louisiana state court action to the United States District Court for the Western District of Louisiana, pleading both diversity jurisdiction and federal question jurisdiction.[27] On February 24, 2010, AK/IHI moved to remand the action to state court.[28] A hearing on the Motion to Remand is currently scheduled for July 29, 2010, in the Lake Charles Division of the United States District Court for the Western District of Louisiana.

On February 25, 2010, AK/IHI moved to dismiss the Insurers' Complaint in this court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket Entry No. 13). AK/IHI argues that this court lacks subject matter jurisdiction over the action because there is not complete diversity between the parties. AH/IHI further argues that there is no federal question jurisdiction because General Condition Three is not an agreement to arbitrate coverage disputes, and thus the Federal Arbitration Act and the New York Convention do not apply. AK/IHI also argues that the Insurers have failed to state a claim upon which relief can be

---

[26]<u>Id.</u> ¶¶ 48-51.

[27]Notice of Removal, Exhibit G to Defendant's Memorandum, Docket Entry No. 18.

[28]Motion to Remand, Exhibit H to Defendant's Memorandum, Docket Entry No. 19.

granted because General Condition Three applies only to disputes over the amount of loss, whereas the dispute between the parties concerns issues of coverage.   Finally, AK/IHI argues that a declaratory judgment is not available to the Insurers under federal law because there is a pending action in state court in Louisiana concerning the same issues.

## II.   Subject Matter Jurisdiction

As a threshold matter, AK/IHI challenges whether the court has subject matter jurisdiction to hear this action.   Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction.   "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)).   "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Clark v. Tarrant County, 798 F.2d 736, 741 (5th Cir. 1986).   The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists.   See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).

-9-

The Insurers have pled two grounds for subject matter jurisdiction.  First, the Insurers argue that the court has original jurisdiction over this action pursuant to 9 U.S.C. § 201 et seq., which provide for the enforcement of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention") in the United States.  In particular, 9 U.S.C. § 203 provides:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.  The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

In applying the New York Convention, the Fifth Circuit has held that it "contemplates a very limited inquiry by courts when considering a motion to compel arbitration," and that the court should compel arbitration if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen.  Francisco v. Stolt Achievement MT, 293 F.3d 270, 273 (5th Cir. 2002).  If these requirements are met, the Convention requires district courts to order arbitration.  Id.

AK/IHI disputes the first element, i.e., whether there is an agreement in writing to arbitrate the dispute.  Determining whether the parties agreed to arbitrate the dispute in question involves

two considerations:  (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.  <u>Am. Heritage Life Ins. Co. v. Lang</u>, 321 F.3d 533, 537 (5th Cir. 2003). The court concludes that General Condition Three in the Policies is an agreement to arbitrate something.  The clause is titled "Arbitration," and the text of the clause uses the term "arbitration" five times.[29]  It specifies that "[t]he seat of the arbitration shall be the State of New York."[30]  These references show the intent of the parties to arbitrate at least a certain category of disputes.

What is less clear is "whether the dispute in question falls within the scope of that arbitration agreement."  General Condition Three appears to represent an agreement that the parties will submit their dispute to arbitration "[i]f the Insured and the Underwriters fail to agree on the amount of loss," i.e., when there is a factual dispute about the extent or dollar value of damages. AK/IHI argues that this action concerns a legal dispute over the coverage provided by the Policies, rather than a factual dispute about the amount of loss.  The Insurers argue that General Condition Three should be construed broadly, so as to encompass disputes over coverage.

---

[29]Property Insurance Subscription Policy, Exhibit A to Insurers' Complaint, Docket Entry No. 1, p. 19.

[30]<u>Id.</u>

For the reasons explained below, the court will not decide this question.   To decide whether subject matter jurisdiction exists would require the court to rule on the merits of the Insurers' motion to compel arbitration.   Because this decision would bear on essentially similar questions pending in a previously filed action currently under consideration in another United States District Court, the court concludes that deciding whether coverage issues fall within the scope of General Condition Three would violate the first-to-file rule, which is discussed below.   For the same reasons, the court will not decide whether diversity jurisdiction is present in this action.

### III.   The First-to-File Rule

The existence of a prior-filed action involving the same parties and essentially similar issues in the United States District Court for the Western District of Louisiana may limit the actions that this court should properly take.

### A.   The First-to-File Rule

The first-to-file rule is based on "principles of comity and sound judicial administration." Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir. 1997).   It "requires federal district courts -- courts of coordinate jurisdiction and equal rank -- to exercise care to avoid interference with each other's affairs." West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 728 (5th Cir. 1985).

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 603 (5th Cir. 1999) (citing Save Power, 121 F.3d at 950; West Gulf Maritime, 751 F.2d at 728). The rule vests in the court in which the first of the two related actions was filed the responsibility of "determin[ing] whether subsequently filed cases involving substantially similar issues should proceed." Sutter Corp. v. P & P Indus., Inc., 125 F.3d 914, 920 (5th Cir. 1997). Therefore, the second-filed court should usually stay, dismiss, or transfer the action over which it is presiding in deference to the first-filed court. See West Gulf Maritime, 751 F.2d at 729 & n. 1, 730. This enables the court in which the first related action was filed to "decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." Sutter Corp., 125 F.3d at 920. "In the absence of compelling circumstances, the Court initially seized of a controversy should be the one to decide whether it will try the case." Mann Manufacturing, Inc. v. Hortex, Inc., 439 F.2d 403, 407 (5th Cir. 1971). In determining which action was filed first, the court considers a removed case to have been filed on the date it was filed in state court, rather than on the date of removal. See Igloo Products Corp. v. The Mounties, Inc., 735 F.Supp. 214, 217 (S.D. Tex. 1990).

-13-

**B.    Analysis**

The  action  currently  pending  between  the  parties  in  the
Western  District  of  Louisiana  was  filed  in  Louisiana  state  court  on
February  1,  2010.[31]   This  action  was  filed  on  February  4,  2010.   The
action  pending  in  Louisiana  is  therefore  the  first-filed  action.
The  two  actions  also  deal  with  substantially  similar  issues.   While
the  action  in  Louisiana  is  a  suit  for  breach  of  contract  and  the
action  in  this  court  seeks  to  compel  arbitration,  both  actions  are
essentially  concerned  with  the  question  of  what  losses  the  Insurers
are  obligated  to  cover  under  the  Policies.   The  two  actions  concern
the  same  parties  and  the  same  facts.   The  Insurers  pled  the  same
grounds  for  federal  jurisdiction  in  both  actions,  and  AK/IHI  has
challenged  federal  jurisdiction  in  both  actions  on  the  same
grounds.   There  is  no  reason  why  the  Insurers  could  not  have  filed
its  motions  to  compel  arbitration  and  seeking  declaratory  judgments
in  the  action  currently  pending  in  Louisiana.   Absent  compelling
circumstances,  see  Mann Manufacturing,  439  F.2d  at  407,  the  court
is  obligated  under  the  first-to-file  rule  to  dismiss  this  action  or
transfer  it  to  the  Western  District  of  Louisiana.

The  Insurers  argue  that  the  first-to-file  rule  should  not
apply  in  this  action  because  compelling  circumstances  require  an
exception.   First,  the  Insurers  argue  that  the  first-to-file  rule

---

[31]Complaint,  Exhibit  A  to  Defendant's  Memorandum,  Docket  Entry
No.  15,  p.  1.

should not apply because the Louisiana action was an anticipatory lawsuit filed by AK/IHI for purposes of forum shopping.  The court does not agree.  Alleging that another party engaged in "forum shopping" does not establish that the opposing party's choice of forum was abusive.  All plaintiffs must choose a forum in which to file their suit, and it is well settled that a plaintiff's choice of forum is entitled to "appropriate deference."  See In re Volkswagen of America, Inc., 545 F.3d 304, 315 (5th Cir. 2008).

The cases cited by the Insurers for the principle that courts will disregard the first-to-file rule to prevent forum-shopping -- e.g., British Borneo Exploration, Inc. v. Enserch Exploration, Inc., 28 F.Supp.2d 999 (E.D. La. 1998), and 909 Corp. v. Village of Bolingbrook Police Pension Fund, 741 F.Supp. 1290 (S.D. Tex. 1990) -- involved situations in which parties sought to deprive an aggrieved party of its choice of forum by filing anticipatory declaratory judgment actions.  These cases do not support disregarding the first-to-file rule in this action.  AK/IHI is the party bringing the grievance and, thus, should be entitled to the plaintiff's traditional choice of forum.  Moreover, AK/IHI seeks to recover on the merits of its claims, and is not merely seeking a declaratory judgment.  And finally, Cameron Parish, Louisiana, is a logical forum in which to settle the dispute.  This action involves damage to property in Cameron Parish.  Because all the parties to this action signed insurance policies covering property in Cameron Parish, it is the one location to which all parties to

the action have a connection.  It is not abusive "forum shopping" to file suit in the venue with the most factual connections to the dispute.

The Insurers also argue that the court should disregard the first-to-file rule because "the balance of convenience favors the later filed action."[32]  Courts have recognized an exception to the first-filed rule where the balance of convenience favors the second-filed action.  See Employers Ins. of Wasau v. Fox Entertainment Group, Inc., 522 F.3d 271, 275 (2d Cir. 2008); Igloo Products, 735 F.Supp. at 218.  The Insurers, however, have not established that the Southern District of Texas is a more convenient location than the Western District of Louisiana for addressing the dispute.  As discussed above, Cameron Parish is the location with the most factual connections to the dispute, and it is a location to which all parties to the dispute have a connection.  The dispute concerns property damage in Cameron Parish and, thus, a court located in Cameron Parish will be a more convenient location for accessing physical evidence or for obtaining testimony from witnesses who work at or live near the affected property.  The United States District Court in Lake Charles is located in Cameron Parish and is therefore a convenient location in which to address this dispute.  This court

---

[32]Plaintiffs' Surreply to Defendant's Reply Brief in Further Support of Motion to Dismiss, Docket Entry No. 37, p. 14, quoting Multi-Shot, LLC v. B & T Rentals, Inc., 2010 WL 376373, *6 (S.D. Tex.).

sees no reason to disregard the first-to-file rule on the basis of
the parties' convenience.

## C.   Conclusion

The court concludes that because the action between the
parties currently pending in the Western District of Louisiana was
filed before the action in this court, and because the two actions
concern substantially similar issues, the first-to-file rule
obliges this court to dismiss or transfer this action.  The court
further concludes that no compelling circumstances require the
court to disregard the first-to-file rule.  The court therefore
will transfer this action to the United States District Court for
the Western District of Louisiana.  The court makes no ruling on
AK/IHI's Motion to Dismiss (Docket Entry No. 13).

## IV.   <u>Conclusion and Order</u>

For the reasons stated above, the court concludes that the
first-to-file rule obliges the court to transfer this action to the
court where the first-filed action is pending.  Accordingly, this
action is **TRANSFERRED** to the Lake Charles Division of the
United States District Court for the Western District of Louisiana.

**SIGNED** at Houston, Texas, on this the 16th day of June, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-17-